Good morning. May it please the Court. I'm Bruce Moore. I represent Mr. Kollman and Helen Frazier, who's the trustee of the bankruptcy of Donald Haley, who was one of the individuals that had the judgment entered against them in the state court case. I couldn't frame the issue better than the last statement made in the responding brief by the insurance company in this case than by asking if this last statement, the first statement in their conclusion is true. Mr. Kollman and Frazier are seeking prejudgment interest on a covered judgment issued in 2004. That's what they've convinced Judge Panner we were doing, and that's what I'm here to basically ask you to rule that Judge Panner and the insurance company are absolutely incorrect. It's a key issue in the case, and it springs from the actual language in the insurance contract, because the insurance contract basically puts together a bushel of things that cannot exceed $5 million in liability by the insurance company. Included in that bushel of things is defense costs, settlements, awards, judgments, which are defined within the parentheses as including prejudgment interest and postjudgment interest on covered judgments. It's the only time the term is used. A covered judgment can only be, that term can only be used meaning that it's a judgment against an insured that is covered by an insurance policy. That's the only thing that covered judgment can mean. The insurance company wants you to not make a distinction between a covered judgment and a judgment against them. They want to look but all in one. And we've cited you all the cases that talk about, no, these are completely different things. And Judge Panner made the right call when it came to CELTEC. He looked at the bushel, but he misinterpreted our part, our part of the bushel that cannot exceed. We don't argue that their liability does not exceed $5 million. We don't argue that at all. That bushel existed in 2004, all right? Within that bushel was the defense costs of CELTEC. Within that bushel was the covered judgments, including all prejudgment interest and all postjudgment interest, and that bushel could not be overloaded to include more than $5 million, period. The covered judgment against Coleman. The covered judgment is against Haitley and Carpenter, the two defendants, okay? It was obtained by Coleman and Frazier's in it because Haitley, the defendant, filed bankruptcy and Coleman acquired her interest to go after the insurance company for, hey, hey, this was a covered judgment, you've got to pay. So the issue is they tried to convince you, and they apparently were able to convince Judge Panner, that they have expressed language within their contract that constitutes an agreement between the insurance company and the insurer that takes out of play ORS 82, which is the 9 percent interest on the State court. But there is no such agreement in there. There is no expressed language within this insurance policy that says I, as the insurance company, promise I will pay for that bushel on the date it becomes due. And I breach my agreement to you that I'm supposed to pay for that bushel, and when I breach that agreement to you, you're agreeing with me that I get to use your money for 10 years without paying you any money, no interest, I get the benefit of that the full 10 years. And the insurance company tells you that's expressed in the contract. It's not expressed in the contract. The contract itself refers to you're going to put the covered judgment into the bushel and it's going to the extent you've got prejudgment interest and postjudgment interest and it takes it beyond and it overflows the bushel, we're not paying. We agree with that. But when the bushel is defined, it's a totally separate case. The first case, Coleman going after those two defendants. That first case is a case on fraud. It's a case on breach of fiduciary duty. It's tort cases. It came to an end in 2004. There was no prejudgment interest awarded on that $40 million judgment. There was none. There was postjudgment interest awarded at 9%, but 9% on $40 million is $4 million a year over 12 years. We'd be sitting here asking you for $50 million. I agree the cases say no, you can't get $50 million by taking your total judgment because all we agreed to pay was the bushel, the $5 million. That's set in 2004. The insurance company sits on the money for 12 months and then walks in, read our contract, Your Honors. We don't owe them 9% interest on this. Look, it's expressed in the contract. It is not expressed in the contract. So you were seeking a judgment against the insurance company for not paying the covered judgment? Yes. That's what this case is all about. It's two separate cases. And if you look at it, in the first case, the covered judgment resulted as a result of the actions of the insureds and the insureds of the defendants. The second case, this one that was in Federal court, was suing the insurance company, saying we're covered. You need to pay this. It was two-part. It was seeking declaratory relief that it was owed, and it was, hey, by the way, you owe us money. And on that second judgment, the Oregon statute applies prejudgment and arrest. Correct. Any monies that are owed, and then the issue that is due. Pardon? Any money that is due. Any money that's due. So we're not asking to do 9% on $40 million at all. It's the bushel that was due. You're asking for an arrest on the $5 million. Pardon? You're asking for an arrest on the $5 million. Yes. Yes. And that's all we're asking interest on. And then the cases are absolutely clear on it. If you have other questions, could I reserve to you at this point? Yes. You may reserve your time. Yes. We understand your argument. Okay. Thank you. Thank you. Good morning, Your Honors. May it please the Court and Counsel, Don Burforth representing National Union. In light of the specific language of the National Union policy, the district court adopted the reasoning of the Buckhannon case, which we cited extensively in our pleadings, stating that the parties to an insurance contract can agree to limit the amount of prejudgment interest recoverable. As Judge Panner stated, even though the action is now being brought by a third-party claimant to enforce a judgment, its recovery is limited by the policy provisions agreed to by the parties at the time they entered into the contract. That is the insurance agreement. And that would be CELTEC and National Union. Is any judgment achieved by Coleman and Glaser versus the insurance company a covered judgment under the policy of your insureds who were found to be liable to Coleman? Your Honor, we believe it is. How could that be? There are no parties to that contract. If you look at the language of the policy where it talks about loss, as Mr. Moore suggested, it talks about damages, settlements, judgments, including pre and post judgment on covered damages. On covered judgments. On covered judgments. Excuse me, Your Honor. And this is a covered judgment. In fact, if you look at the judgment. Which is a covered judgment? The second judgment, if you will, was a covered judgment. But the problem with that is Mr. Coleman was never a party to an insurance contract with you. That's correct. It's not. So how can he be bound by the language of an insurance contract? He is making his argument. He's seeking to recover under Section 18 of the National Union policy. And Section 18 of the National Union policy allows a third-party claimant to seek to enforce a judgment to the extent the policy applies. And you have to take that language and combine it with the language of the covered judgment, and it becomes absolutely clear that what Mr. Moore is arguing for Mr. Coleman and Ms. Frazier is that they want coverage for that judgment. Well, you know, if covered judgment is ambiguous, you would interpret it in favor of the insured. We don't believe, Your Honor. It sounds to me like it's ambiguous, the way you're arguing it. Your Honor, they can both. Let me ask you this. They got a judgment. The second judgment was a claim against the insurance company for failure to pay up. Isn't that right? Essentially. Yeah. No, it was a judgment against the insurance company holding that there was coverage under the policy. That's a different issue. But the insurance so there was a judgment in the State court, correct? That's correct. And it was a covered judgment? Correct. And there would have been prejudgment and post-judgment money owed on that covered judgment? We don't know if there was prejudgment because it wasn't entered. Post-judgment interest. There would have been post-judgment interest, right? Correct. There could be. And it wasn't paid for some reason. Right. Because there was a coverage dispute. What you're describing, Your Honor, is what the Alaska Supreme Court pointed out. I don't know what I'm describing. I'm just trying to understand the situation. I want to make sure. So there was a lawsuit in State court that resulted in this judgment. As Judge Baez said, right? That's correct. There was a lawsuit. For some reason. I'm only saying just for I don't care what the reason was, but for some reason it wasn't paid by the insurance company. Correct. Correct. And so then Coleman and then eventually this other person sues the insurance company to pay the judgment, right? Correct, Your Honor. And they sued. And your position is, your argument and what Judge Painter agreed to, Pander that this new lawsuit against the insurance company also qualified as a covered judgment? And that's correct, Your Honor, because I find that hard to follow. You have to think about it in this context. Is the judge, the only reason that Mr. Coleman, no, let me back up for a second. In terms of the facts, there was a coverage dispute over whether or not there was coverage under the policy. To pay the judgment. To pay the judgment. So it wasn't an automatic thing. That litigation went on for quite some time. In fact, until 2009, as the record reflects, there was no determination that there was coverage for anyone. However, after 2009, they determined that, and without going into great detail, it was an issue over some language in the policy, the Court determined that there was coverage for the client, that the exclusion did not apply. This Court affirmed. And therefore, we went back to the district court and said, all right, now that we know that that exclusion doesn't apply, what does that mean? So, yes, what Mr. Coleman was suing for is he was suing to argue that there was coverage under the judgment. What you're describing is exactly what the Buckhannon case was talking about, and if I may pronounce it wrong, the Guillen case for the Alaska Supreme Court, is really an extra-contractual claim. And those courts pointed out, as other courts, that if there is an issue about a judgment delay, and as Mr. Moore argues, they emphasize the equity of receiving prejudgment interest in excess of the policy limits, and the policy limits, the Court considers the policy benefit, is remedied by a bad-faith claim, a claim for extra-contractual damages. And Mr. Coleman and Ms. Frazier brought a bad-faith claim, and the district court found there was no bad faith and they didn't appeal it. That's the remedy for any kind of a delay against the payment of the judgment, the earlier judgment. They're seeking to, under the contract, under the policy limits. Yes. I didn't say that. You didn't hear me use the words extra-contractual damages. They were seeking payment against the insurance company because the insurance company had refused to pay, even if you had a good-faith legitimate dispute, right, about coverage. I'll give you that. But there was they had to engage in subsequent litigation in order to determine whether or not they were going to be able to recover under the policy. But what they're doing is they're seeking under the terms of the policy, and the terms of the policy control, and it's the plain meaning of the policy is that prejudgment interest is part of loss, and loss is limited to the policy limits of $5 million. That's what Judge Panner found. That's right. But they're not interested as to the covered judgment. It is a covered judgment. The only judgment that is a covered judgment is a judgment against the insured, because that's the only coverage of the insurance policy. No, Your Honor. With all due respect, Your Honor, I'm saying that the only way that Mr. Coleman or Ms. Frazier can recover under the policy, under Section 18 of the policy, which they're doing, is that there be coverage for that judgment. As Judge Panner found, that's a covered judgment, plain and simple. So they are asking, the judgment that they are asking to be paid, the one that where Judge Panner found that there was the exclusion didn't apply to preclude coverage, that that is a covered judgment, because it refers to, as the policy, as Section 18 points out, there's only coverage to, or there's only, they can seek recovery or to enforce a judgment to the extent the policy applies. And when you read that in connection with covered judgment, it's clear that what they are meaning is that there is a, there is coverage for that judgment. And of course there's coverage for that judgment, or Mr. Coleman and Ms. Frazier wouldn't be here arguing that they should be entitled to coverage. That's why Judge Panner came down and said it was plain and simple a covered judgment. And as a covered judgment, he was constrained by the language of the policy to include that amount of prejudgment interest on that covered judgment within the definition of loss. As he pointed out, if CELTEC, who purchased the policy from National Union, had wanted to purchase a policy that provided coverage for prejudgment interest outside of the contract, outside extra damages, supplemental damages, they could have purchased the policy. But they didn't choose to do that. And Mr. Coleman and Ms. Frazier are basically stuck with the language and the terms and conditions that were part of the policy that was purchased for CELTEC and its officers and directors. Your Honor, a second issue is that this whole issue of if there is prejudgment interest, when does it begin? First of all, the district court, Judge Panner did not ever address this issue because he found that they were not entitled to prejudgment interest and therefore didn't get into the issue of prejudgment interest or when it would apply. So technically it's not before this Court, but assuming that this Court is going to consider it, the under Oregon law, the prejudgment interest couldn't begin to run until September 6th of 2015. I don't think there's any dispute under Oregon law that the Court cannot award prejudgment interest until, as Judge Panner wrote, quoting from the Cascade Corporation v. American Home case, until the exact amount of damages is easily ascertainable, the monies have become due and the date such sums became due is also easily ascertainable. As the district court found in the Schnitzer case, prejudgment interest is to be awarded only where the amount of underlying damage is known or easily ascertainable and became due and owing on a date certain. Didn't you know, didn't the insurance company know just how much they paid out in defense costs and in other deductions from the $5 million? No, Your Honor. There were disagreements going on between how much of the defense costs were covered and so that had to be resolved. There were disagreements over whether CELTEC should receive coverage because they were claiming that they should also receive coverage. Then there was the Coleman-Fraser issue, whether how much they could receive. And then there was the issue of the IRS, and the IRS had liens on everything. And was arguing over that they got certain percentages. And it wasn't until September 16th, 2015, that the court determined who would recover under the policy and how much. And actually, although the IRS attended hearings and was present, they didn't formally intervene until after September 16th. They actually formally intervened on September 18th, 2015. Coleman and Fraser were not due anything until at least September 16th of 2015. Before that, they might not get anything. Refresh my recollection. What happened on that date? That was when there was a judgment entered in this case. So essentially, they're not entitled to prejudgment interest because at that point, by the next day, it switches over to postjudgment interest. But you can only, September 16th, 2015 was the date of the judgment. So essentially, we are arguing until the judgment was entered, there was no, it was not ascertainable as to the amount that was due and who it was due to. So the question, for instance, with Coleman and Fraser is, under Oregon law, there has to be a date certain on which they're due an ascertainable amount of money. Does it make any difference if you ascertain the date certain retroactively? You can't in this particular case because it wasn't known. Well, you knew on September 16th, 2015, what the defense costs were, what the IRS position, et cetera, and how much each of these two individuals, Coleman and Fraser, were going to get. They can say, that's the amount we should have gotten back then when the judgment was entered. But again, they couldn't say that because the Court hadn't determined how much CELTEC was going to get for defense costs. When it did determine all those things, those deductions from the $5 million, was there about $2 million for each one of them left over? Your Honor, may I answer? I'm sorry. You said if there were two, there was $2 million left. Actually, there was about $4 million left over with the IRS. I said $2 million for each one of them. Oh, okay. So Judge Tanner determines on September 15th, 2015, that each of these two individuals gets $2 million. And Mr. Moore says, fine, now we've determined that. That was what you were owing me back when the judgment was entered. But first of all, that wasn't owed then. In fact, nothing was owed to Coleman and Fraser because it wasn't known whether they were going to get. There was an issue that they had, that there was coverage for the loss, but there was no determination until September 16th, 2015. Who would get it? Okay. I think I got your point. All right. Thank you, Your Honors. Your time is up. Thank you very much. Thank you. We ask you to affirm Judge Tanner's decision. Do you want to address that second point first? Yeah. And Judge Tanner did expressly, and it was an appeal. Okay. So you get to the end of the case. Everybody agrees . . . Speak in the microphone, please. Oh, sorry. Sorry. Sorry. You get to the end of the case. Everybody agrees $5 million is owed. Judge Tanner has these motions filed post coverage issue where CELTEC says, look, we paid out defense costs out of pocket and we get that $800,000 in defense costs before you start allocating to Coleman and Fraser. And so that decision had to be made. And he made that decision and he ruled that under the policy, CELTEC as the owner of the policy got paid the $800,000 first and then what was left over was given to the other plaintiffs who were alleging that they were entitled to their share of the $5 million bushel. Judge Tanner then concluded that this was readily ascertainable as to CELTEC's, which was a way more complicated issue than ours. CELTEC had to establish at that time this is what our attorney's fees were in defending that case. They had to submit all these bills. That all happened in 2014 or 2015 as well, saying, okay, this is the total of our bills and this is what has to be paid. And then Judge Tanner makes the determination, okay, they paid out $800,000 in attorney's fees and I'm going to put that first. It didn't increase the $5 million. It was first pulled out of the bushel, leaving only $4.2 million left over. Did CELTEC get paid that? Yeah. CELTEC got the and CELTEC got paid not only the 800,000, but he ruled that because there wasn't that parentheses language behind defense costs, that they were entitled to prejudgment interest going all the way back to the 2004. Because he ruled that is the date the money was owed. And that was not appealed by anybody. That's not before you. That date is established. The money, the bushel of $5 million was owed back in 2004, period. And Judge Tanner goes through the whole analysis on why it was, sorry, why it was readily ascertainable and it was established as of that time. So going back to the, sorry, going back to the other issue. I mean, the $5 million was always readily ascertainable. It was just who was going to get it. Exactly. Now, I'm going to leave this. I'm running out of time here. On the first issue, they're alleging and Judge Tanner's opinion says that the covered parties and the insurance company reached an agreement that it would be zero interest. That's what his whole opinion rests on, is that there was an agreement reached by the parties to take them outside of the statute. And if you look at the agreement, there is nothing in there where there is any agreement whatsoever to take it to zero. There is nothing in there expressly that states that if the insurance company is determined to owe you the $5 million bushel and it refuses to pay, that it gets to hold onto that money without owing you interest under the State law that applies. It doesn't say that. I didn't hear him argue that. Pardon? I didn't hear him argue that. Sorry. I apologize. I apologize. Oh, and on the Burkheimer case, there was a subsequent case that we cited in our reply brief. It's the Miller case. The Miller case at Headnote 22 expressly states that the Birkenhamer case only was dealing with the interest that goes into the bushel on the covered judgment and did not apply to the other case that we're here arguing, which is a whole different case. Now we're turning to insurance company. Can you please pay the $5 million that you promised to? Okay. I got it. Thank you. Thank you, Your Honor. The matter is submitted at this time.
judges: Paez, Bea, Anello